**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                    *Attorney for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE HAAK**<br>4534 Marple Street<br>**Philadelphia, PA 19136**<br>　　*Plaintiff*, | Civil Action No. |
| v. | Complaint and Jury Demand |
| **ERICKSON LIVING d/b/a ANN'S CHOICE**<br>**30000 Ann's Choice Way**<br>**Warminster, PA 18974**<br><br>**701 Maiden Choice Lane**<br>**Catonsville, MD 21228**<br>　　*Defendant.* | |

### CIVIL ACTION

Plaintiff, Bonnie Haak (hereinafter "Plaintiff"), by and through her attorney, Koller Law LLC, bring this civil matter against Erickson Living d/b/a Ann's Choice (hereinafter "Defendant" or the "Company"), for violations of the Americans with Disability Act 1990 ("ADA"), as amended, the Pennsylvania Human Relations Act ("PHRA") and the Family Medical Leave Act ("FMLA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Erickson Living d/b/a Ann's Choice is a retirement

community with a location at 30000 Ann's Choice Way, Warminster, PA 18974 and a headquarters located at 701 Maiden Choice Lane, Catonsville, MD 21228.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil

Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant.

14. The Charge was assigned a Charge Number and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") dated August 1, 2017.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On April 29, 2014, Defendant hired Plaintiff as a Housekeeper.

21. Plaintiff was well qualified for her position and performed well.

22. Plaintiff suffers from the disability asthma.

23. When she was first hired, Plaintiff notified Defendant of her disability, but did not require a reasonable accommodation.

24. On June 5, 2015, Plaintiff suffered an asthma attack at Defendant and was taken to Abington Memorial Hospital via ambulance.

25. Plaintiff was forced to take a medical leave of absence in the form of Family Medical Leave Act leave ("FMLA") that began on June 10, 2015 and ended on August 2, 2015.

26. On August 3, 2015, Plaintiff returned to work at Defendant at full duty.

27. On November 16, 2015, Plaintiff began another medical leave of absence and was set to return to work on December 30, 2015.

28. On November 16, 2015, Plaintiff underwent an operation to repair a hiatal hernia which was exacerbating the symptoms she experiences from asthma. The operation was conducted by Dr. Robert Josloff.

29. On November 17, 2015, Ann R. Heller, CRNP, of Abington Memorial Hospital, signed Plaintiff's Accommodation Medical Questionnaire requesting that Plaintiff be placed on an additional medical leave of absence to recover from surgery and to be placed on light duty in the form of limited chemical exposure and in a well ventilated area when she returned.

30. On December 1, 2015, Danielle Ischinger, Human Resources Manager, sent Plaintiff a letter that Defendant would be unable to accommodate Plaintiff's light duty request due to chemical exposure being an essential function of the Housekeeping position.

31. Ms. Ischinger stated further in her letter, Plaintiff would be terminated on December 31, 2015, if she could not return to work without the requested accommodation or find another position at Defendant.

32. On December 3, 2015, Plaintiff emailed Ms. Ischinger if she had received an accommodation request from her doctor regarding a mask and stated "I don't see how it's a problem as long as my doctor approves it."

33. On December 4, 2015, Dr. Conrad C. Reed, Plaintiff's Pulmonologist, wrote Plaintiff a note that she would be able to return to work on January 6, 2015 as a Housekeeper if she could be granted the accommodation of wearing a face mask.

34. Upon information and belief, the face mask cost approximately $1.79 for a pack of six.

35. On December 29, 2015, Ms. Ischinger emailed Plaintiff that she would contact corporate regarding the accommodation request to wear a mask.

36. In addition, Plaintiff applied to six (6) other positions that she was well qualified for, including, but not limited to, Human Resource Coordinator and Front Desk position.

37. However, Defendant did not even give Plaintiff a single interview for any of these positions.

38. On January 4, 2016, Ms. Ischinger emailed Plaintiff that she needed to draft a letter to Plaintiff's doctor in order to confirm if Defendant could provide her with the reasonable accommodation of wearing a mask.

39. On January 5, 2016, Dr. Josloff wrote Plaintiff a note that she could return to work without restrictions on January 11, 2016.

40. Plaintiff immediately went to Defendant and hand delivered Dr. Josloff's note to Ms. Ischinger.

41. Ms. Ischinger informed Plaintiff that she would need to check with corporate to see if Defendant could accommodate Plaintiff.

42. Plaintiff offered to purchase the masks herself but, Ms. Ischinger again stated that she would have to check with corporate to see if Defendant could accommodate Plaintiff.

43. Ms. Ischinger notified Plaintiff that she would contact her on Januaray 11, 2016, and let Plaintiff know if Plaintiff could return to work with the accommodation.

44. However, on January 11, 2016, Ms. Ischinger did not contact Plaintiff.

45. On January 15, 19 and 20, 2016, Plaintiff emailed Ms. Ischinger when she would be able to return to work.

46. On January 21, 2016, Ms. Ischinger sent Plaintiff a termination letter.

47. The reason given for Plaintiff's termination was that Defendant would be unable to accommodate Plaintiff.

48. Defendant relied on Plaintiff's doctor's note from November 17, 2015, instead of Plaintiff's more recent doctors' notes which stated that she could return to work.

49. In doing so Defendant failed to accommodate Plaintiff.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

50. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

51. Title I of the Americans with Disabilities Act ("ADA") prohibits discrimination against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112, *et seq.*

52. Defendant is an "employer" within the meaning of the ADA because it is "engaged in an

industry affecting commerce [and] has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ."

53. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12102. Gaul v. AT & T, Inc., 955 F. Supp. 346, 350 (D.N.J. 1997).

54. Plaintiff is able to perform the essential functions of the position with or without reasonable accommodations.

55. At all relevant times, Plaintiff has had a physical impairment that substantially limits the types of activities "that are of central importance to daily life."

56. Defendant initially hired Plaintiff but refused to provide her with a reasonable accommodation once it learned of her disability.

57. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff because of her disabilities, a failure to employ because of her disability, a failure to accommodate, and a failure to engage in the interactive process in violation of the ADA.

58. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

59. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

60. The PHRA prohibits discrimination on the basis of disability or handicap.

61. Plaintiff is a member of a protected class in that she is an individual with a disability.

62. Plaintiff was qualified for the position at issue.

63. Plaintiff was able to perform the essential functions of the job with or without a reasonable accommodation.

64. Despite being qualified for the position, Defendant subjected him to adverse employment action(s), including, but not limited to, denying her request for a reasonable accommodation, refusing to engage in the interactive process, failing to continue his employment, and terminating him.

65. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff because of her disability.

66. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – DISCRIMINATION/RETALIATION
### VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*
### Plaintiff v. Defendant

67. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

68. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Plaintiff was eligible for Family and Medical Leave Act Leave.

69. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave in order to care for her own serious medical conditions.

70. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

71. Defendant made Plaintiff eligible for application for leave under the FMLA.

72. Nonetheless, Defendant terminated Plaintiff shortly after she applied and was approved for FMLA leave.

73. Defendant's motivation for terminating Plaintiff was connected causally to Plaintiff's application of FMLA leave.

74. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

75. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

76. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

77. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Bonnie Haak, requests that the Court grant him the following relief against Defendant:

(a)  Compensatory damages;

(b)  Punitive damages;

(c)  Liquidated damages;

(d)  Emotional pain and suffering;

(e)  Reasonable attorneys' fees;

(f)  Recoverable costs;

(g)  Pre and post judgment interest;

(h)  An allowance to compensate for negative tax consequences;

(i)  A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA

(j)  Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)  Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

10

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: November 2, 2017          By: *David M. Koller*

David M. Koller, Esquire
*Counsel for Plaintiff*